**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A CRIMINAL COMPLAINT**

I, FBI Special Agent Paul Garaffo, being duly sworn, depose and state as follows:

## INTRODUCTION

1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since January 2015.  I am currently assigned to one of the FBI's Homeland Security Task Forces in the FBI's Boston Field Office. My responsibilities include investigating violations of federal criminal laws including relating I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since January 2015.  I am currently assigned to one of the FBI's Homeland Security Task Forces in the FBI's Boston Field Office. My responsibilities include investigating violations of federal criminal laws including relating to fraud, such as 18 U.S.C. § 1956, Laundering of Monetary Instruments and Title 21 U.S.C. § 841, distribution of a controlled substance.  Previously, I was employed at the U.S. Department of Defense as a civilian Intelligence Analyst.  I worked in this capacity for four and a half years. I have participated in numerous investigations, during the course of which I have interviewed witnesses, conducted physical surveillance, executed search warrants, and used other investigative techniques to secure relevant information regarding various federal crimes.

2.      .  Previously, I was employed at the U.S. Department of Defense as a civilian Intelligence Analyst.  I worked in this capacity for four and a half years. I have participated in numerous investigations, during the course of which I have interviewed witnesses, conducted physical surveillance, executed search warrants, and used other investigative techniques to secure relevant information regarding various federal crimes.

3.      I have participated in and conducted several investigations in conjunction with federal, state, and local law enforcement agencies as a Special Agent. Specifically, I have participated in and/or conducted several investigations involving, but not limited to, traditional

1

and non-traditional organized criminal conspiracies' including investigations involving search warrants authorizing the court-ordered interception of telephone calls (so-called "wiretap") involving organized crime conspiracies as well as controlled drug buys and recoveries. I have extensive experience over the previous 11 years working with FBI Confidential Human Sources or CHSs. I have worked with and received specialized on-the-job instruction from others assigned to the FBI HSTF related to organized crime-related offenses and drug trafficking.

## PURPOSE OF AFFIDAVIT

4.       I submit this affidavit in support of an application for a criminal complaint charging Jianyang Huang, date of birth 09/16/1987 ("HUANG"), with Possession with Intent to Distribute 5 Kilograms or More of Cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(ii).

5.       I am familiar with the facts and circumstances of this investigation from my own personal participation, from confidential human source information, from my review of records and oral and written law enforcement reports, and from my conversations with other investigators who have reported their findings to me.

6.       This affidavit does not set forth all the facts developed or known by me during the course of this investigation, nor all of the information known by me or other law enforcement officers. Rather, it sets forth only those facts and information that are necessary and sufficient to establish probable cause for the issuance of the attached complaint.

## PROBABLE CAUSE

7.       In November 2025, I, together with another investigator, met with a confidential human source (CHS-1).[1] CHS-1 provided information about a person he knew as "Big Brother

---

[1] CHS-1 is an active FBI source. CHS-1 pleaded guilty to a federal money laundering conspiracy and is cooperating with the FBI in the hope that the government will recommend a reduced sentence based on his cooperation. CHS-1 previously robbed a money launderer and placed a GPS tracking device on a vehicle to try to locate an individual they believed may have been cooperating with law enforcement. CHS-1 is involved in several FBI-led Transnational

Yang," who I believe to be HUANG. According to CHS-1, "Big Brother Yang" drove a red Camry. HUANG was previously known to State and Federal investigators and was suspected of being a criminal associate of Jianxiong Chen.[2] HUANG was observed numerous times throughout the investigation of Chen at Chen's residence picking up and dropping off what was believed to be illegal narcotics and/or United States currency.  It was believed that HUANG was involved in narcotics trafficking and money laundering with Chen based on the circumstances of the visits, which were brief, typically occurred during or in the overnight hours, and involved HUANG parking his car in or at Chen's garage.  HUANG was driving a red Camry, Massachusetts license plate 5MAS21. At the time, investigators identified HUANG during the Chen investigation by physical observations of his appearances and comparisons to HUANG's driver's license photograph on file with the Massachusetts Registry of Motor Vehicles ("RMV").

8.      On November 13, 2025, CHS-1 met with investigators and reported that "Big Brother Yang," had previously told CHS-1, in sum and substance, that he had a connection to buy cocaine in Los Angeles, California, and that he wanted CHS-1 to identify someone to open bank accounts and a business website, so a friend in China could use the accounts and the website to launder possibly drug money. "Big Brother Yang" had also told CHS-1, in sum and substance, that he does not have someone to distribute cocaine in Massachusetts.

---

Organized Crime investigations related to drug trafficking, including domestic networks and overseas networks, and illicit marihuana grow operations in New England. CHS-1 has provided reliable information in the past, and I believe that the information provided by CHS-1 in this investigation is reliable based on their record of reliability, and all the ways in which investigators have corroborated CHS-1's information, such as through the preserved communications, surveillance observations, and seized evidence, as described herein. I am not aware of any instance while CHS-1 has been an FBI source, in which CHS-1 has provided information that was proven to be false.

[2] Chen, along with six others were charged on July 8, 2025, in the case, *United States v. Jianxiong Chen et al.*, 1:25-cr-10284-JEK, for their involvement in a multi-million-dollar money laundering, alien smuggling and drug trafficking enterprise. Chen was named in Counts One and Two of the indictment returned by the Grand Jury, charging Conspiracy to Manufacture, Distribute, and Possess with Intent to Distribute Marihuana, in violation of 21 U.S.C. § 846, and Money Laundering Conspiracy, in violation of 18 U.S.C. § 1956(h).

9.    On November 25, 2025, investigators surveilled CHS-1 meeting "Big Brother Yang." They observed both parties meeting and confirmed HUANG's identity as "Big Brother Yang" via comparison to HUANG's RMV driver's license photograph, and his arrival in the red Camry, license plate 5MAS21, which is registered with the RMV in HUANG's name.

10.    After the meeting, investigators debriefed CHS-1. CHS-1 reported that HUANG stated, in sum and substance, that he had a cocaine connection in Los Angeles, and the connection was looking for someone to transport kilogram-sized shipments from Los Angeles to Boston. HUANG also indicated to CHS-1, in sum and substance, that he had a separate cocaine connection in the New York, New York-area, who he wished to introduce to CHS-1. According to CHS-1, HUANG was not interested in being involved with the New York connection himself, and HUANG indicated, in sum and substance, that he would not be present at a face-to-face meeting if one were to occur.

11.    I understand through debriefings of CHS-1 that HUANG strictly used the mobile application, WeChat, to communicate with CHS-1.[3] According to CHS-1, they typically communicated via WeChat voice calls but sometimes exchanged audio messages and text messages in the application. CHS-1 provided investigators with two WeChat ID's used by HUANG: the first one was "Huu000huu", which, according to CHS-1, HUANG no longer uses; the second ID, which CHS-1 indicated HUANG presently uses, is "Jaff888666".

12.    Between November 2025 and March 2026, CHS-1 regularly reported to investigators having continued conversations of a criminal nature with HUANG, specifically about the distribution of large quantities of cocaine. Based on the reporting of CHS-1, I believe that

---

[3] WeChat (known as Weixin in China) is a dominant Chinese messaging application developed by Tencent, a conglomerate headquartered in China. The application allows users to text, video call, audio call, pay bills, shop, and hail rides within a single interface. Accounts are identified only by a "WeChat ID," which is a unique identifier chosen by the user.

HUANG was in contact with two individuals who appeared to be located outside the United States. CHS-1 provided a screenshot of text message communications that they indicated they received from HUANG.  It appeared to be a three-person WeChat group chat in Chinese.  An investigator obtained a photograph of the messages, as they appeared on the screen of CHS-1's mobile phone. The screenshot is reproduced below left.



13.     Investigators utilized the Google Translate online application to translate the messages into English. I include the English translations next to the original screenshot, above right.  In my training and experience, Google Translate is a reliable method for translating Chinese characters to English.  Based on my analysis of the translated messages, the group chat included

HUANG (in green in the screenshot) and two participants, "X sylvan" ("(437) 908-1297") and "Feng" ("66 95 739 5550").[4] HUANG requested "samples," but "X sylvan" refused, stating that they sell in bulk and gave assurances of quality. I believe, based on these messages and my conversations with CHS-1, that "X sylvan" is a cocaine supplier and "Feng" is likely HUANG's friend, as he was requesting samples for HUANG. The last messages while not entirely clear, appear to show that "Feng" was attempting to broker a deal by requesting "five points," believed to be a percentage, and "10-20 items," likely referring to kilograms of cocaine.

14.    CHS-1 provided further information to investigators and reported that HUANG was in a group chat with "X sylvan" and "Feng". CHS-1 informed investigators that about the time HUANG sent CHS-1 the screenshot, he conveyed to CHS-1, in sum and substance, that they were discussing between five and 10 kilogram-sized cocaine shipments. According to CHS-1, HUANG stated that the price per kilogram cocaine was between $15,000 and $16,000.

15.    Based on the above-referenced WeChat group chat, I believe that HUANG was conversing with two individuals and requesting samples of cocaine before agreeing to a bulk purchase. The dealer ("X sylvan") rejected the idea of a sample for purchases to be made in bulk quantities. CHS-1 reported that HUANG stated he was told by these individuals, in sum and substance, that multi-kilogram purchases of cocaine could be delivered to the Boston-area to interested buyers.

16.    CHS-1 further reported that, according to HUANG, in sum and substance, these individuals employed several people as drug runners and were seeking out additional individuals in the Boston-area to conduct deliveries. HUANG noted that the suppliers were not interested in

---

[4] I am aware that investigators conducted follow-on, open source analysis of the numbers. The analysis revealed that number ending -5550 was likely a Thai provider cellular telephone number, while number ending -1297 was likely a Canadian provider cellular telephone number.

selling or otherwise providing a sample of their cocaine but had told HUANG that buyers could return their purchases within two days. HUANG further informed CHS-1, in sum and substance, he paid the cocaine suppliers using cryptocurrency.

17.    On March 10, 2026, CHS-1 reported that HUANG told them, in sum and substance, that he had three different United States customers for whom he had purchased 21 kilograms of cocaine and that he was coordinating the inbound shipments and follow-on distribution.  HUANG further indicated, in sum and substance, that he preferred the cocaine be transported by another individual to Boston and he was primarily coordinating the deals but not directly receiving the shipment himself.  Finally, HUANG indicated to CHS-1, in sum and substance, that he expected the cocaine to arrive in the Boston-area within two weeks.

18.    On March 18 and again on March 20, 2026, CHS-1 informed investigators that HUANG claimed he was in communication with his cocaine supplier. Specifically, HUANG confirmed that his contact was in Malaysia and a friend from China. CHS-1 further informed investigators that HUANG further claimed, in sum and substance, that he was facilitating a purchase of approximately 20 kilograms with a distributor located in New York.

19.    On March 21, 2026, according to CHS-1, they communicated with HUANG, who asked CHS-1, in sum and substance, to pick up and transport the cocaine from New York while he managed the communications with the New York distributor. CHS-1 further informed investigators that HUANG planned to rent a motel room where the cocaine shipment would be dropped off. And according to CHS-1, HUANG preferred that CHS-1 pick up the cocaine using a rental car. Finally, according to CHS-1, HUANG instructed them to download the "Signal" application.[5]

---

[5] Signal is a messaging app that has end-to-end encrypted texting, voice/video calls, and media sharing for individuals and groups. It is widely considered one of the most secure messaging platforms because it does not store user data or

20.    On March 23, 2026, CHS-1 reported that they had discussed details of picking up and transporting the cocaine with HUANG, including commission: CHS-1 would be paid $500 per kilogram transported with $200 per delivery made thereafter to a local dealer.  At the direction of the FBI, CHS-1 agreed to pick up and transport the cocaine on behalf of HUANG.

21.    The same day, CHS-1 informed investigators that HUANG confirmed the pick-up of cocaine in New York for Wednesday, March 25, 2026. According to CHS-1, HUANG told them, in sum and substance, that he intends to contact the New York distributor via Signal to coordinate a location for CHS-1 to pick up the cocaine. CHS-1 also reported that HUANG, in sum and substance, indicated that CHS-1 should take the cocaine to a hotel near the H Mart supermarket, located at 3 Old Concord Road, in Burlington, Massachusetts.

22.    On March 24, 2026, CHS-1 informed investigators that they met with HUANG in-person and discussed the details of traveling to New York to pick up and transport the cocaine the next day, March 25. Additionally, CHS-1 reported, in sum and substance, that an individual claiming to be the New York distributor, using the account name "happiness", contacted him via the Signal application and requested the password for the meeting tomorrow. According to CHS-1, they sent the password given to them by HUANG: "333".  Thereafter, CHS-1 was invited to a Signal group chat with "happiness" and second Signal user with the account name "Li Ayden".  A conversation in Chinese ensued.

23.    I manually reviewed CHS-1's mobile phone and documented the Signal conversation.  Once again, investigators used the Google Translate online application to translate the messages to English.  Images showing the translated conversation in English (left) and the original conversation in Chinese (right), are reproduced below.

---

metadata on its servers. Based on my training and experience, I know that Signal is commonly used by criminals to avoid law enforcement interception and detection.

8



24.     "Li Ayden" indicated that the password for the "20 fruits tomorrow morning" was "333". "Li Adyen" then wrote, "11:30 / Flushing", and promised to send "the address" the following morning. CHS-1 understood Flushing to be the Flushing neighborhood in Queens, New York. Based on my knowledge of the investigation and information provided by CHS-1, particularly HUANG's instructions to download and use Signal with respect to a cocaine pickup and delivery, I believe that user "happiness" and user "Li Ayden" were associated with HUANG's New York cocaine distributor.

25.     On March 25, 2026, CHS-1 drove to New York.  At about 8:48 a.m., CHS-1 provided investigators with a screenshot of Chinese text messages from the Signal application that they reported were sent by the New York distributor. Using the Google Translate online application, investigators confirmed that CHS-1 had requested to meet at a Home Depot. However,

the request was declined, and CHS-1 was given a specific address on Ash Avenue in Flushing, Queens.[6]

26.    Investigators established surveillance positions in the area of the address on Ash Avenue and met CHS-1 first to equip them with covert audio-recording equipment.  At about 9:58 a.m., investigators observed CHS-1's car turn onto Ash Avenue, but they could not follow or make observations due to the narrowness of the street. According to CHS-1, they parked and notified the New York distributor of their arrival using Signal. Shortly thereafter, CHS-1 reported that he was met by an unknown Asian male wearing a baseball cap. CHS-1 told investigators the unknown Asian male came from down the street with two suitcases, one black and one blue. The unknown Asian male handed CHS-1 the two suitcases, which CHS-1 then placed in the trunk of their car. CHS-1 reported no conversation with the unknown Asian male.  Investigators later reviewed the recording generated during the pick up of the suitcases and confirmed that no conversation was captured.

27.    At about 10:04 a.m., CHS-1 informed investigators that he was "all set," which they understood meant that the drug pick up was successful. Upon receiving the two suitcases, CHS-1 departed the area in the car, and investigators followed CHS-1's car directly to a preplanned meeting location.

28.    At that preplanned meeting location, investigators opened the trunk of CHS-1's car and observed two suitcases, one black and one blue. The suitcases both had combination locks on the zippers, and they were locked. CHS-1 provided investigators with the combination, which was sent by the New York distributor using the Signal group chat.

---

[6] I am aware of the specific address but withhold it from my affidavit at this time because the investigation is ongoing.  Should the Court wish to inquire further about the address, I propose making the information available for *in camera* inspection.

10

29.     CHS-1 provided investigators with a screenshot of "Li Ayden" messaging them the numbers "567", which is reproduced below, left.  Using the Google Translate online application, the message translated as "lockbox 567." Investigators tried the combination on the combination locks on both suitcases, opening them and revealing approximately ten rectangular brick shaped packages in each suitcase, which, based on my training and experience, is consistent with packaged kilograms of cocaine.  A photograph documenting the appearance of the contents of the suitcases immediately following the meeting on Ash Avenue, is reproduced below, right.



30.     Following the meeting with investigators after the pick up of the suitcases, CHS-1 drove back towards Massachusetts in possession of the suitcases. Investigators escorted their car, and they observed no diversions or unexplained stops on the drive to Massachusetts. According to CHS-1, earlier that morning, at approximately 9:20 a.m., prior to the pickup of the suitcases, HUANG had directed CHS-1, in sum and substance, to meet him at a hotel in Burlington, Massachusetts with the suitcases. HUANG provided the specific address of 11 Old Concord Road, Burlington, MA 01803, which is a Staybridge Suites Hotel. After the pick up in New York, HUANG asked CHS-1 to share their locations using their mobile phones.  At the direction of investigators, CHS-1 agreed. At approximately 11:11 a.m., according to CHS-1, the location of

11

HUANG's phone appeared to be around a Shell Gas Station, 61 Middlesex Turnpike in Burlington, which is approximately 0.3 miles from the hotel that HUANG had sent CHS-1 as a meeting location. At approximately 11:42 a.m., a Volkswagen car was observed by an investigator parked in the parking lot of the Staybridge Suites Hotel.  I know from the investigation that HUANG was driving a Volkswagen Jetta, New Jersey license plate K16UYF (the "Volkswagen"), that he had rented from Enterprise and regularly parked at his residence, 10 Ross Road, Lexington, Massachusetts.

31.    Investigators established surveillance positions at Staybridge Suites Hotel.  At approximately 2:40 p.m., they observed CHS-1 arrive in the rear parking lot. According to CHS-1, they then contacted HUANG by phone and requested that he come to CHS-1's car to transfer the suitcases.

32.    At approximately 2:45 p.m., investigators observed HUANG approaching the rear of CHS-1's car.  CHS-1 opened the trunk and HUANG reached in and picked up one suitcase. CHS-1 removed the second suitcase. They started to walk away from the car with the suitcases. Investigators then intervened. They stopped and detained HUANG and took custody of the two suitcases.

33.    Thereafter, HUANG agreed to an interview with me and another investigator.  The interview took place in mixed English and Mandarin Chinese. Using a Mandarin Chinese interpreter through a telephone language service provided by the Massachusetts State Police, HUANG was read his rights from the FBI's FD-395 form.  The other investigator and I stopped at multiple points to confirm that HUANG understood each right.  I also gave HUANG a FD-395 Advice of Rights form in Chinese for him to read, and I again read the form in English, stopping

periodically to confirm he understood each sentence. HUANG indicated that he understood, and he signed an FD-395 written in English and in Chinese.

34.     HUANG acknowledged that he was involved in drug distribution, including marihuana and cocaine. I asked HUANG, "how much are in those two bags we took from that car?", HUANG responded "20". When I then asked, "20 what? What is in the bags?", HUANG responded, "cocaine."  HUANG described knowing a "big fish," which based on my training and experience and the context of the interview, indicated a person of significance in criminal activity. HUANG indicated that he used one of his mobile phones to contact his "weed customers," and a second phone to communicate with a New York "big fish" associate. HUANG also explained that he had local drug customers that were expecting delivery but who had not yet paid him, which I understood to be a reference to the seized cocaine shipment.

35.     Following the interview with HUANG, investigators inquired with management of the Staybridge Suites Hotel. Hotel management indicated that according to their records, "HUANG, Jianyang" of 10 Ross Road, Lexington, MA 02421, used MasterCard ending -6209, to reserve a room from March 25, 2026, to March 26, 2026. According to the records, HUANG provided a cellular telephone number, an email address "yang91987016@gmail," and identified his vehicle as a "VW Car".

36.     At about 11:59 p.m. on March 25, 2026, investigators conducted a TruNarc field test on the substance in one of the wrapped packages from the suitcases, which indicated the presence of "Cocaine HCL", or cocaine hydrocholoride. The wrapped substances in one suitcase collectively weighed approximately 12.66 kilograms, including packaging. The wrapped substances in the other suitcase collectively weighed approximately 13.22 kilograms, with packaging.

## **CONCLUSION**

37.     Based on my training and experience, along with all the above referenced information gathered from the confidential human source, CHS-1, previous investigative knowledge and surveillance conducted on HUANG, and activities conducted on March 25, 2025, related to the controlled pickup and delivery of a field-tested cocaine shipment, there is probable cause to believe that on March 25, 2025, in the District of Massachusetts, HUANG committed the offense of Possession with Intent to Distribute 5 Kilograms or More of Cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(ii). Accordingly, I request that the Court issue the attached criminal complaint naming HUANG.

Sworn to under the pains and penalties of perjury,


*Paul Garaffo /by Paul G. Levenson*
_____
Paul Garaffo
Special Agent
Federal Bureau of Investigation


Sworn to via telephone in accordance with Federal Rule of Criminal
Procedure 4.1 on March 26, 2026.

HON. PAUL G. LEVENSON
UNITED STATES MAGISTRATE JUDGE

14